**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CURTIS TAYLOR,

       Plaintiff,

      vs.                                                                                     No. 10cv840 WJ/LFG

ERIN O'CONNOR and APEX SERVICES, LLC,
a Colorado Limited Liability Company,

       Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon Defendants' Cross Motion for Summary Judgment for lack of Subject Matter Jurisdiction, filed December 21, 2010 **(Doc. 24)** and Plaintiff's Motion for Partial Summary Judgment filed December 3, 2010 **(Doc. 13)**.  Having considered the parties' briefs and the applicable law, I find that Plaintiff's Motion for Partial Summary Judgment is well-taken and shall be granted, and that Defendants' cross-motion for summary judgment shall be denied.

**Background**

The complaint in this case alleges default on what Plaintiff refers to as a "promissory note" and asserts federal jurisdiction based on diversity, 28 U.S.C. § 1332(a).  A description of the note or Agreement in question is helpful in putting the parties' arguments in context.  Erin O'Connor ("O'Connor") is the owner of Apex Services, LLC ("Apex"), a Colorado limited liability company that provides personnel to the oil and gas industry on a contract basis.  Plaintiff

Curtis Taylor ("Taylor") was an employee of Apex and was assigned under contract to work for BP Oil Company in San Juan County, NM from May 2006 to April 2007. He was terminated in April 2007 at BP's request.

The note at issue in this case calls for Defendants' payment of payroll checks for the time that Taylor worked for Apex. Taylor had failed to cash his bi-weekly payroll checks while working for BP. When he eventually tried to cash a large number of these checks, the banks would not negotiate the checks because they were older than ninety days. Taylor contacted O'Connor in late 2009 or early 2009 and demanded that Apex pay in a lump sum, all of the sums represented in the stale payroll checks that Taylor could not negotiate. O'Connor did not believe that the non-negotiability of the payroll checks was Apex's responsibility, but in order to avoid litigation, the parties executed an Agreement on February 9, 2009 which is now the focal point of this lawsuit.[1] The Agreement was effective as of February 23, 2009, and calls for 30 payments to be paid every other Monday by Curtis and Apex. The Agreement is for payment of "payroll wages for the time period November, 2006 through September, 2007, in the amount of [$83,992.83]. Under the Agreement, Taylor was required to cash the checks within fourteen days of receiving them. The Agreement also states that upon non-payment of the principal due, Taylor "may pursue legal action seeking payment of the balance owed, interest, attorney's fees and court costs." Doc. 2 ("Exhibit A").

I.  **Legal Standard**

Both parties have filed summary judgment motions, each of which the Court will address

---

[1] Whether O'Connor's Affidavit (Doc. 23-1) should be considered extrinsic evidence is irrelevant for the Court's purposes here, which is to provide some factual background for the parties' positions.

separately. *See Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). Plaintiff seeks summary judgment on the remaining balance on the note ($71,930.59), as well as for interest (at least the minimum amount of interest at 8% annually of $8,983.41), attorney's fees and costs. Defendants challenge the Court's jurisdiction over this action, contending that the complaint fails to allege the requisite $75,000.00 for diversity jurisdiction.

## Discussion

Before turning to the merits of the case, the Court must first determine whether it has jurisdiction over this case. *See Payton v. U.S. Dept. of Agriculture*, 337 F.3d 1163 (10th Cir. 2003) (Jurisdiction is a threshold question that a federal court must address before reaching the merits).

**I.     Diversity Jurisdiction – Amount in Controversy**

Defendants seek summary judgment on the ground that the sum of the matter in controversy does not exceed $75,000.00. Plaintiff's motion seeks summary judgment for an award of the balance alleged to be due on the note, which he argues meets the $75,000.00 threshold for federal jurisdiction.

Because the federal courts are courts of limited jurisdiction, there is a presumption against the existence of diversity jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). The rule governing dismissal for want of diversity jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith. *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). It must appear to a legal certainty that the claim is really for less than the

jurisdictional amount to justify dismissal. *Id*.; *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339 (10th Cir. 1998).

The burden is on the party asserting jurisdiction – in this case, the Plaintiff – to show it is not a legal certainty that the claim is less than the jurisdictional amount. *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179 (10th Cir. 2000). The legal certainty standard is very strict. Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction. *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003). Only if it is established as a matter of law before or during the trial that a plaintiff was not entitled to recover an amount sufficient to meet the jurisdictional requirement will a court lack subject matter jurisdiction. *Id*. (emphasis added).

The remaining balance under the Agreement is alleged to be $71,930.59, which is clearly under the jurisdictional amount required. Thus, diversity jurisdiction hinges on whether attorney's fees can be considered in the calculation. Plaintiff contends that it can be considered, and case law supports his position. Attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract. *See Missouri State Life Insurance Co. et al v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133, 133-34, 78 L.Ed. 267 (1933), cited in *Plus System, Inc. v. New England Network, Inc*., 804 F.Supp. 111, 116 (D.Colo.,1992); *Molzahn v. State Farm Mut. Auto. Ins. Co*., 422 F.2d 1321, 1322 (10th Cir.1970); *Miera v. Dairyland Ins. Co*., 143 F.3d 1337, 1340 (10th Cir. 1998) (reasonable attorney's fees for claim brought under Unfair Trade Practices Act would bring complaint within jurisdictional amount); 14A C. Wright & A. Miller, Federal Practice and

Procedure, § 3712 at 176-77 (2d. ed. 1985) (the law is now "quite settled" that attorneys' fees are a part of the matter in controversy when they are provided for by contract or by state statute); *see also Building Erection Services Co. v. Ceco Corp.*, 760 F.Supp. 188, 189-90 (D.Kan.1991) (Section 1332(a) on its face includes "interests and costs" which includes attorney fees when those fees are an item of damages recoverable under a contract at issue).

O'Connor does not dispute the black letter law on this issue, but rather disputes whether the Agreement actually provides for an award of attorney's fees. He presents "additional facts" by way of his Affidavit, stating that he never agreed that Taylor would be entitled to recover attorney fees, and contends that the Agreement does not expressly allow for such recovery. Doc. 23, Statement of Add'l Facts No. 4 & 5. These additional facts do not create any material factual dispute: the language of the Agreement speaks for itself. *See Blossom v. Yarbrough*, 429 F.3d 963 (10th Cir. 2005) (Offering additional facts does not in itself create a dispute of material fact). Whether or not O'Connor states that he agreed to pay attorney fees is irrelevant to the question of whether the express language of the Agreement allows the Court to consider attorney fees in order to satisfy the jurisdictional amount.

Defendants also contend that in order for attorney's fees to be included in the jurisdictional amount, a contract must unequivocally state that one or more of the parties would be entitled to recover attorney fees in the event of litigation. Resp. (Doc. 23) at 6. That is exactly what is happening here: Plaintiff is pursuing litigation for non-payment of the principal due which, under the express terms of the Agreement, entitles Plaintiff to seek attorney fees.

Defendants argue that because the language of the Agreement lacks mandatory language regarding the payment of attorney's fees, the Court cannot consider fees as part of the jurisdictional amount. The Agreement states that Plaintiff "may" pursue legal action seeking

payment of attorney fees.  However, there is no basis for the argument that language in a contract or statute must *require* the payment of attorney's fees in order to satisfy the jurisdictional amount.  Further, other than a reasonable up-front calculation, there is no certainty as to the amount of fees that will be awarded, even for a prevailing party, and there is no actual recovery of attorney's fees until a court orders an award of fees. For example, the fee-shifting civil rights statute, 42 U.S.C. § 1988 provides in pertinent part that, "[i]n any action or proceeding to enforce [§ 1983], the court, *in its discretion*, *may allow* the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ." 42 U.S.C. § 1988(b) (emphasis added); *see Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (attorney's fees "*permitted*" by statute considered for determining jurisdictional amount); *see also Building Erection Services Co., Inc. v. Ceco Corp.*, 760 F.Supp. 188, 189 (D.Kan.,1991) (claim for attorney's fees based upon parties' contract at issue, which provided for recovery of attorneys' fees by the "prevailing party").

In this case, it is quite reasonable to assume that attorney fees in this case would be sufficient to reach the jurisdictional amount.  To date, Plaintiff has already incurred over $4,000.00 in attorney's fees.  Doc. 13-1 (Ex. A).[2]  Plaintiff has satisfied his burden of showing that it is not a legal certainty that his claim is for less than $75,000.00, and the Court finds that diversity jurisdiction is established upon that showing.   Thus, Defendants are not entitled to summary judgment in their cross-motion for summary judgment.

## II.     Whether Plaintiff is Entitled to Summary Judgment

---

[2]     According to Plaintiff, the note also allows for interest on default in the amount of 8% annually, and the amount of interest due to Plaintiff as of the filing date of the complaint is $8,983.40.

A federal court sitting in diversity must apply the conflict of law provisions of the forum state. *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1178 (10th Cir. 2009)(citing *Electrical Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999). New Mexico courts normally look to the place of contracting for the applicable contract law. *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992) (citing *Miller v. Mutual Benefit Health*, 76 N.M. 455, 415 P.2d 841, 843 (1966)).  The top of the note identifies LaPlata County, Colorado as the county and state where Defendants executed the document, and thus, which law applies when deciding contract issues for this case.  Under Colorado law, a contract "must be construed to ascertain and effectuate the intent of the parties, as expressed in the contract itself." *Fort Lyon Canal Co. v. High Plains A & M, LLC.*, 167 P.3d 726, 728 -729 (Colo., 2007).  Extrinsic evidence is permissible in some instances:

> Should the language of the contract be ambiguous, lending itself to more than one reasonable interpretation, extrinsic evidence of the intent of the parties may be helpful in resolving the ambiguity. Id. Although we have noted that in construing contracts, as distinguished from statutes or rules having general applicability, it may be appropriate to look beyond the "four corners" of the document and consider context and surrounding circumstances, not only for resolving ambiguity but even for determining whether it exists, we have always made clear that extrinsic evidence of intent can never contradict or change the language of a contract or justify an interpretation not reasonably derivable from the contract itself.

*Fort Lyon Canal*, 167 P.3d at 728 -729.

A. <u>The Agreement is Unambiguous</u>

I find no need to consider extrinsic evidence in this case, since I find the language in the Agreement to be clear and unambiguous.  Under the Agreement, the amount of each payment was to be $2,766.56, for thirty payments, effective February 23, 2009; and that the total amount due Plaintiff is $84,992.83.  There is nothing ambiguous about what Defendants were required to

7

do, how much was to be paid, how often, and when the payments were to begin. Defendants do not dispute that they executed a note on account of services Plaintiff rendered to Defendants, for which services Plaintiff has not been paid in full.  They dispute Plaintiff's use of the word "default," but at the same time admit that they have made a total of only four payments. Four scheduled payments cannot possibly satisfy the total amount due to Plaintiff.[3]  Whatever else Defendants choose to call it, they have admitted default because they have not presented any material facts which would suggest to a reasonable fact finder that full payment was made on the note, or that anything more than four payments were made.  The lack of any genuine issue of fact is tantamount to an admission by Defendants that the principal balance on the note is $71,930.59, as Plaintiff alleges in the Complaint.

    The language of the Agreement is also unambiguous regarding Plaintiff's entitlement to seek interest and attorney's fees and costs if Plaintiff pursued legal action for non-payment of the balance.  Defendants "dispute" Plaintiff's statement of facts which state that Plaintiff is entitled to interest from and after March 9, 2009, and that Plaintiff is entitled to recover attorney's fees and costs from Defendants. Statement of Undisp. Facts No. 12 & 13.  Defendants' "facts" are little more than Defendants' arbitrary interpretation of what they would prefer the Agreement to state, instead of what it actually states.  For example, O'Connor states that during the negotiations leading up to the execution of the Agreement, Taylor's attorney included a paragraph providing that Taylor "may" ask for interest and attorney's fees if the installment

---

[3] In response to Plaintiff's statement of fact No. 8 that Defendants missed the first payment due March 9, 2009, Defendants state that "[a] payment was made on April 22, 2009." Doc. 23 at 2.  The response that payment was made on a date other than March 9th does not dispute Plaintiff's statement of fact that payment was not made on March 9th.  The response is further non-material because it has no bearing on whether a balance is due – which is the crux of this lawsuit.

payments called for by the Agreement were not paid, and that he "did not agree to pay interest or attorney's fees" if Taylor filed a lawsuit. Doc. 23-1 (Ex. A), ¶¶ 9-14. O'Connor's statements do not create a dispute of fact on whether the Agreement entitles Plaintiff to seek interest and fees because, despite all of his protestations, O'Connor does not dispute that he signed the Agreement which expressly provides for payment of interest and attorney's fees in the event of a lawsuit.

Having found that the Agreement is unambiguous, either with regard to the payment schedule or the issue of Plaintiff's entitlement to seek interest, fees and costs, there is no need to consider the extrinsic evidence, which Defendants offer in the form of O'Connor's Affidavit.[4] However, even if O'Connor's statements were considered, they would not change the result. Defendants do not present any evidence to suggest that the balance was paid in full, or that the balance is other than what Plaintiff represents. In fact, the only issue Defendants take on, either in its response to Plaintiff's motion for summary judgment, or its own cross-motion, is the issue pertaining to Plaintiff's entitlement to interest and fees. Accordingly, Plaintiff is entitled to summary judgment on default on the Agreement, and as to whether Plaintiff is entitled to seek interest, attorney's fees and costs under the Agreement.

B.  Laches

Defendants have raised laches as an affirmative defense. Colorado law recognizes laches as an equitable defense "that acts to bar an award of pre-suit damages." *Bristol Co., LP v. Osman*, 190 P.3d 752, 755 (Colo.App.,2007). As an equitable defense, it is committed to the

---

[4] New Mexico law follows the same rule regarding consideration of extrinsic evidence. Extrinsic can be used to resolve ambiguity in a K. *Padilla v. RRA, Inc.*, 124 N.M. 111 (Ct. App. 1997); *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508 (1991) (parol evidence rule does not bar admission of evidence extrinsic to a written contract to determine the circumstances under which the parties contracted and the purpose of the contract).

sound discretion of the trial court, and the decision of the trial court is reviewed for abuse of discretion. *Id*. A trial court may apply laches when the plaintiff unreasonably and inexcusably delays bringing a legal claim and the delay prejudices or injures the defendant in some material way. *Id*. (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028-29 (Fed.Cir.1992).[5]

The basis for this defense is that Taylor failed to cash his payroll checks while he was employed by Defendants. When the checks became stale and could not be negotiated by the banks, Taylor then demanded that Defendants pay $82,000.00 (representing the amount of uncashed checks) in one lump sum. This was a financial problem for O'Connor, who then agreed to pay in installments. Taylor's delay might have been a concern prior to executing the Agreement, but despite this concern, Defendants opted to execute the Agreement instead of risking litigation. Upon signing the Agreement, Defendants took on the obligations set forth in the Agreement, and for some reason have stopped doing so. Laches cannot be a defense to Defendants' own failure to abide by the obligations under the Agreement.

Defendants also note that Taylor received the last payment in September 2009, and waited twelve months before bringing this lawsuit. Defendants do not allege that the action is time-barred by statute or otherwise, and thus the date Taylor filed the complaint has no bearing

---

[5] Under New Mexico law, the elements required to be proven by one asserting defense of laches are : (1) conduct on part of defendant, giving rise to situation of which complaint is made and for which complainant seeks remedy; (2) delay in asserting complainant's rights, complainant having had knowledge or notice of defendant's conduct and having been afforded opportunity to institute suit; (3) lack of knowledge or notice on part of defendant that complainant would assert right on which she bases her suit; and (4) injury or prejudice to defendant in event relief is accorded to complainant or suit is not held to be barred. *Martinez v. Martinez*, 135 N.M. 11, 83 P.3d 298 (N.M.App.,2003). Despite the expanded elements under New Mexico law, laches would not apply in this case under New Mexico law, either.

on a laches defense. However, the Court agrees with Defendants that this delay is certainly relevant to any award of prejudgment interest which Plaintiff might seek under the Agreement, and the Court will consider counsel's arguments in that regard.

## Conclusion

In sum, I find and conclude that Plaintiff has satisfied his burden of showing that it is not a legal certainty that his claim in this action is less than the jurisdictional amount, and thus diversity jurisdiction is established. Defendants have not presented any genuine issue of fact which would infer that this burden has not been satisfied.

I also find and conclude that Defendants have not presented an issue of fact: (1) to suggest that Defendants are not in default of the Agreement; (2) to suggest that they owe an amount other than the amount alleged by Plaintiff as due under the note; or (3) to dispute that Plaintiff is entitled to seek interest, attorney's fees and costs under the Agreement, which the Court finds to be unambiguous.

Plaintiffs shall submit by formal pleading, a request for the aforementioned interest, attorney's fees and costs, to which Defendants may object.

**THEREFORE,**

**IT IS ORDERED** that upon Defendants' Cross Motion for Summary Judgment for Lack of Subject Matter Jurisdiction, filed December 21, 2010 (**Doc. 24**) is hereby DENIED in that the Court has subject matter jurisdiction over this action, for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment filed December 3, 2010 (**Doc. 13**) is hereby GRANTED in that the Court finds that Defendants have defaulted on the Agreement at issue, and owes Plaintiff the remaining balance on the note

in the amount of $71,930.59;

**IT IS FURTHER ORDERED** that under the express terms of the Agreement, Plaintiff is entitled to seek interest, attorney's fees and costs. Plaintiff's counsel may file a motion for these expenses within **ten (10) days** of the entry of this Memorandum Opinion and Order and shall include an affidavit and time sheets associated with those expenses. Defense counsel shall have **ten (10) days** following the filing of that motion in which to file objections;

**IT IS FURTHER ORDERED** that within **ten (10) days** of the entry of this Memorandum Opinion and Order, Plaintiff shall advise the Court as to why the Court's rulings herein do not dispose of this case. Plaintiff's motion for "partial" summary judgment appears to seek full relief as requested in the Complaint. The Court will assume that this Memorandum, Opinion and Order disposes of the case on the merits in the event that Plaintiff does not advise the Court otherwise.

_____
UNITED STATES DISTRICT JUDGE